UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2443(DSD/SRN)

Oprah D. Keaton, Trustee for the heirs and next of kin of Artis R. Graham,

Plaintiff,

v.

**ORDER**

Officer Patrick Scott, individually and in his official capacity; Officer John Wuorinen, individually and in his official capacity; Officer J. Parsons, individually and in his official capacity; The City of St. Paul; Sue McGinley, R.N., individually and in her official capacity; Nonceba S. Mbangata, R.N., individually and in her official capacity; Sandra Fagerberg, R.N., individually and in her official capacity; John Benninghoff, M.D., individually and in his official capacity; Regions Hospital, a Minnesota corporation,

Defendants.

Kenneth U. Udoibok, Esq., Udoibok Law Office, 2469 University Avenue, St. Paul, MN 55114, counsel for plaintiff.

Gail L. Langfield, Esq., St. Paul City Attorney, 550 City Hall, 15 West Kellogg Boulevard, St. Paul, MN 55102, counsel for defendants Scott, Wuorinen, Parson and City of St. Paul.

Kathryn Messerich, Esq., Halleland, Lewis, Nilan, Sipkins & Johnson, 220 Sixth Street South, Suite 600, Minneapolis, MN 55402, counsel for defendant Benninghoff.

Marlene S. Garvis, Esq., Jardine, Logan & O'Brien, 8519 Eagle Point Boulevard, Lake Elmo, MN 55042, counsel for defendants McGinley, Mbangata, Fagerberg and Regions Hospital.

FILED 10-31-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

This matter is before the court upon the motion for summary judgment of the City of St. Paul, upon the motion for summary judgment or dismissal pursuant to Minn. Stat. § 145.682 of defendant John Benninghoff and upon the motion for summary judgment or dismissal pursuant to Minn. Stat. § 145.682 of defendants Regions Hospital, Sue McGinley, Nonceba Mbangata and Sandra Fagerberg. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants the motion for summary judgment of the City of St. Paul, grants the motion for dismissal pursuant to Minn. Stat. § 145.682 of Dr. Benninghoff, Sue McGinley, Nonceba Mbangata and Sandra Fagerberg, and grants the motion for summary judgment of Regions Hospital.

**BACKGROUND**

Plaintiff Oprah D. Keaton, as trustee for the heirs and next of kin of Artis Graham, her son, brings this action against the City of St. Paul and certain St. Paul police officers, seeking redress for alleged constitutional violations committed during her son's arrest on October 12, 1998. She also brings this action against Regions Hospital nurses Sue McGinley, Nonceba Mbangata and Sandra Fagerberg, Dr. John Benninghoff and Regions Hospital, alleging that they committed medical malpractice in treating Graham following his arrest.

**A. Graham's Arrest**

On the evening of October 12, 1998, defendant Officer John Wuorinen, driving an unmarked car, watched Artis Graham roll through a stop sign, turn wide and travel in excess of the speed limit. Wuorinen followed Graham into an alley where Graham turned off his car lights. In the alley, an individual approached Graham's car. Wuorinen suspected possible narcotics activity and activated his emergency lights. Wuorinen claims that Graham then accelerated to 55 miles per hour on a residential street, disregarding traffic signs and nearly colliding with other motorists. (Def. City of St. Paul's Mem. Supp. Summ. J. at 1, 2; Udoibok Aff. 28 May 2002, Ex. A, p. 42 at ¶¶ 19-21.) Defendant Officer Patrick Scott was also involved in chasing Graham. Officer Scott claims that he saw Graham trying to turn his car into a parking lot when it crashed onto some boulders and then saw Graham running on the sidewalk.

The parties dispute what occurred next between the officers and Graham. Officer Scott claims that he cut Graham off with his car and that Graham slipped and fell while trying to jump over the hood of Scott's car. (Def. City of St. Paul's Mem. Supp. Summ. J. at 2; Udoibok Aff., 28 May 2002, Ex. C, p. 38 ¶¶ 17-23.) Plaintiff claims that Graham did not attempt to jump over Scott's hood. Instead, plaintiff asserts that Scott drove his car into Graham's right leg, causing him to fall to the ground. (Pl.'s Mem. in Opp'n

to Def. City of St. Paul's Mot. Summ. J. at 5; Udoibok Aff. 28 May 2002, Ex. D, E.)

As Officer Scott began to chase Graham on foot, Graham put his hands on his head and said, "Okay you got me." According to Officer Scott, Graham was walking toward him when he told Graham to get down. Officer Scott claims that Graham then lunged at him and grabbed his jacket collar with his right hand and the butt of Scott's revolver with his left hand. (Def.'s City of St. Paul Mem. Supp. Summ. J. at 2; Udoibok Aff. 28 May 2002, Ex. C, p. 63 ¶¶ 14-25, p. 64 ¶¶ 1-8.) Plaintiff insists that Scott tackled Graham. (Pl.'s Mem. Opp'n to Def. City of St. Paul's Mot. Summ. J. at 5; Udoibok Aff., Ex. D.)

Scott alleges that he hit Graham on the left side of his head with a flashlight because he feared for his life. (Def. City of St. Paul's Mem. Supp. Summ. J. at 2; Udoibok Aff. 28 May 2002, Ex. C, p. 64, ¶¶ 9-12.) Scott claims that while Graham first relented, Graham then attempted to head-butt Scott, at which time Scott claims that he again hit Graham with his flashlight. (Def. City of St. Paul's Mot. for Summ. J. at 2.) Scott hit Graham twice in the head and twice in the left arm/upper torso area. While Scott insists that all hitting took place before Graham was handcuffed, plaintiff claims that the officer also struck Graham after he was

handcuffed. (Pl.'s Mem. Opp'n Def, City of St. Paul's Mot. Summ. J. at 6; Udoibok Aff. 28 May 2002, Ex. D, E, G, p. 2.) Wuorinen then performed first aid on Graham until the medics arrived.

**B Graham's Treatment at Regions Hospital**

Following his arrest, Graham was admitted to Regions Hospital for treatment of wounds and suspicion of ingestion of cocaine-filled balloons. On October 14, a neurologist diagnosed Graham with malingering versus conversion reaction, meaning that Graham was believed to be either feigning a problem or, as a result of being under a high amount of stress, he was physically reacting by not being able to walk or move the right side of his body.

Later that evening, Graham was admitted into the psychiatric ward. Plaintiff alleges that defendant Dr. Benninghoff officially admitted Graham on October 15, which is the only day that Dr. Benninghoff treated Graham. Dr. Benninghoff performed a mental status examination on Graham and ordered psychiatric medication. While Dr. Benninghoff claims that he was called upon for the exclusive purpose of a psychiatric consultation, (Def. Benninghoff's Reply Mem. Supp. Mot. Summ. J. at 2), plaintiff claims that he was also Graham's primary care physician (Pl.'s Mem. in Opp'n to Def. Benninghoff's Mot. Summ. J. at 5).

On October 16, 17 and 18, Dr. Benninghoff was not on-duty or on-call. Other doctors and nurses treated Graham. On October 16, Graham was evaluated during a team meeting. The team notes signed

by Dr. Glen Pearson indicate that Graham complained of foot/headache. Defendant nurse Mbangata cared for Graham during the day, while defendant nurse McGinley cared for him at night. Graham did not complain of leg pain to Mbangata, but told McGinley about pain and numbness in his right leg. On October 17, Nurse Mbangata cared for Graham. She noted that Graham continued to use a wheelchair, but that he did take some steps without it, and that Graham had an elevated temperature of 100.2 degrees. On October 18, defendant Fagerberg cared for Graham during the day. She gave him vitamins and a mood stabilizer. At 3:00 p.m., Fagerberg documented Graham's complaint of an intermittent pin-pricking sensation in his right leg. No doctor was called. At 8:00 p.m. Graham died of cardiac arrest as a result of a pulmonary embolism, a blood clot in the lungs.

**C. Current Litigation**

Plaintiff now sues the City of St. Paul, claiming that they are liable under 42 U.S.C. § 1983 for the police officers' alleged excessive use of force. Plaintiff also sues John Benninghoff, Sue McGinley, Nonceba Mbangata, Sandra Fagerberg, and Region's Hospital, claiming that each are responsible for negligent treatment that occurred when the hospital staff allegedly failed to investigate Graham's complaints of pain and numbness in his right leg.

Defendant City of St. Paul brings a motion for summary judgment. John Benninghoff, Sue McGinley, Nonceba Mbangata, Sandra Fagerberg, and Region's Hospital bring motions for dismissal pursuant to Minn. Stat. § 145.682, or in the alternative, summary judgment. After careful review, the court grants the motion for summary judgment of the City of St. Paul, grants the motions for dismissal pursuant to Minn. Stat. § 145.682 of John Benninghoff, Sue McGinley, Nonceba Mbangata and Sandra Fagerberg, and grants the motion for summary judgment of Region's Hospital.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of her claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Civil Rights Claim**

Defendant City of St. Paul moves for summary judgment, claiming that it is not liable to plaintiff under 42 U.S.C. § 1983. Plaintiff, however, claims that a genuine issue of material fact exists as to the adequacy of the City of St. Paul's disciplinary and training procedures because the City of St. Paul has never suspended Officer Scott, and continues to employ him, despite the numerous excessive force lawsuits, internal affairs investigations, written and oral reprimands and other assault charges brought against Officer Scott. Plaintiff also claims that genuine issues of material fact exist as to whether St. Paul's Police Department

policies, customs or procedures promote civil rights violations. Because the court finds that no genuine issues of material fact exist to establish the City of St. Paul's liability under § 1983, the court grants the City of St. Paul's motion for summary judgment.[1]

Under § 1983, a municipality may not be held vicariously liable for the unconstitutional acts of its employees. Monell v. Dep't Social Services, 436 U.S. 658, 694 (1978); Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). However, a municipality may be held liable for the unconstitutional acts of its officials or employees when injury results from those acts that execute an unconstitutional municipal policy or custom. Monell, 436 U.S. at 694; see also Mettler, 165 F.3d at 1204; McGuatha v. Jackson County, 36 F.3d 53, 56-57 (8th Cir. 1994). For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force" behind the constitutional violation. Monell, 436 U.S. at 694.

The Eighth Circuit Court of Appeals distinguishes between municipal custom and policy. See Mettler, 165 F.3d at 1204. A "policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final

---

[1] The court notes that a question of fact may exist as to whether the police officers violated Artis Graham's civil rights. However, even assuming that the officers did violate Graham's civil rights, the City of St. Paul cannot be held liable for the reasons stated below.

authority regarding such a matters." Id. Plaintiff has not provided sufficient evidence of an official policy that arguably played a role in her son's death. Therefore, the court must determine whether plaintiff has come forward with evidence from which a jury could reasonably find the existence of a relevant municipal custom.

Pursuant to Mettler, plaintiff must satisfy three requirements to prove that an unconstitutional municipal custom exists. Those requirements are:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

Id. Liability for an unconstitutional custom cannot result from a single act. See McGautha, 36 F.3d at 57.

The Eighth Circuit has held municipalities liable under § 1983 when the plaintiff has produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct. See Parrish v. Luckie, 963 F.2d 201, 204-05 (8th Cir. 1992)(reviewing the "detailed and compelling" evidence the plaintiff presented that the defendant

police department avoided, ignored and covered up complaints of physical and sexual misconduct by officers); Harris v. City of Pagedale, 821 F.2d 499, 501-06 (8th Cir. 1987)(finding a plaintiff had proven a municipal custom through the presentation of detailed evidence regarding the particular police officer's previous misconduct and the city's failure to investigate or punish that conduct). However, "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." Mettler, 165 F.3d at 1205; Rogers v. City of Little Rock, 152 F.3d 790, 799 (8th Cir. 1998). Instead, plaintiff must prove that past complaints of police misconduct had merit; "the number of complaints bears no relation to their validity." Handle v. City of Little Rock, 772 F. Supp. 434, 437 (E.D. Ark. 1991)(quoting Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987)).

In Mettler, the plaintiff, a mother, brought a § 1983 action against a county sheriff and two sheriff's deputies after her son was shot and killed during a confrontation with deputies. She alleged that Ramsey County should be liable under § 1983 for showing deliberate indifference to the sheriff's department's custom, pattern or practice of using excessive or deadly force. To support her claim, plaintiff produced evidence that fifteen citizens' complaints were filed against the deputies. The Eighth Circuit determined that the plaintiff produced no evidence

regarding the factual background of the previous complaints and no evidence suggesting that the complaints bear any factual similarity to the confrontation with her son. Id. at 1205. The Court therefore concluded that such evidence did not support her § 1983 claim. Id.

Similarly, in this case, plaintiff claims that the City of St. Paul should be liable under § 1983 for its officer's alleged use of excessive force. Specifically, plaintiff claims that a genuine issue of material fact exists as to the adequacy of the City of St. Paul's disciplinary and training procedures because the City of St. Paul has never suspended Officer Scott, and continues to employ him, despite complaints against him.[2] However, as in Mettler, plaintiff provides no evidence regarding the factual background of the prior complaints and no evidence suggesting that the prior complaints are similar to the present incident. Moreover, plaintiff presents no evidence suggesting that the prior complaints had merit or that any alleged custom of failing to train or discipline was the moving force behind any constitutional violation. Therefore, the court grants the City of St. Paul's

---

[2] According to Officer Scott's deposition testimony, Officer Scott has had tens of thousands of contacts with citizens and made thousands of arrests of criminals over a 22 year period. (Udcibok Aff. 28 May 2002, Ex. C at 30-31.) During that time, there have been over 30 complaints against Officer Scott, (id.) and Officer Scott has been sued three times for use of excessive force. A jury rendered a verdict in Officer Scott's favor in two of the three cases; the third case was settled. (Id. at 26-27.)

motion for summary judgment because no material facts suggest that a city policy or custom was the moving force behind any violation of Graham's civil rights.

**III. Medical Malpractice Claim**

Plaintiff also brings a claim for medical malpractice against Dr. Benninghoff, Nurses McGinley, Mbangata, and Fagerberg, and Regions Hospital. In order to establish a prima facie case of malpractice, a plaintiff must satisfy the expert affidavit disclosure requirements of Minn. Stat. §145.682. Teffeteller v. Univ. of Minn., 645 N.W.2d 420, 426 (Minn. 2002)(citing Anderson v. Rengachary, 608 N.W.2d 843, 846 (Minn. 2000)). The statute requires two affidavits from an expert. See Minn. Stat. §145.682, subds. 2-4.

The preliminary affidavit must establish that the facts of the case have been reviewed by an expert whose qualifications provide a reasonable expectation that his or her opinions could be admissible at trial and that the expert believes defendant deviated from the standard of care and caused actual injury to plaintiff. Id. at subds. 2, 3. The Minnesota Supreme Court construes the term "expert" narrowly. See Teffeteller, 645 N.W.2d at 427. That Court requires "both sufficient scientific knowledge of and some practical experience with the subject matter of the offered testimony." Cornfeldt v. Tongen, 262 N.W.2d 684, 692 (Minn. 1977). Academic knowledge cannot substitute for "practical knowledge of

what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant." Id. Furthermore, practical knowledge is discipline-specific. For instance, in Teffeteller v. Univ. of Minn., the Minnesota Supreme Court held that an experienced physician lacked sufficient experience in the subjects of oncology and bone marrow transplants to be considered an expert where the defendant allegedly failed to diagnose morphine toxicity after a bone marrow transplant. 645 N.W.2d at 427.

The second affidavit must be served upon defendant within 180 days of commencement of the suit and include: (1) the applicable standard of care and the acts or omissions that allegedly violated the standard and (2) an outline of the chain of causation between the violation of the standard of care and plaintiff's damages. See Minn. Stat. § 145.682 at subds. 2, 4; see also Teffeteller 645 N.W.2d at 428 (citing Sorenson v. St. Paul Ramsey Med Ctr., 457 N.W.2d 188, 190 (Minn. 1990)).

To establish the applicable standard of care, an affidavit must do more than simply repeat the facts in the hospital record. Sorenson, 457 N.W.2d at 192, Teffeteller, 645 N.W.2d at 428 (quoting Sorenson, 457 N.W.2d at 192); Stroud v. Hennepin. Co. Medical Ctr., 556 N.W.2d 552, 556 (Minn. 1996)(quoting Sorenson, 457 N.W.2d at 192). Assertions that a doctor or nurse failed to properly diagnose or failed to properly evaluate are viewed as empty

conclusions capable of masking a frivolous claim. Sorenson, 457 N.W.2d at 192-193. For that reason, the Minnesota Supreme Court in Sorenson v. St. Paul Ramsey Med Ctr. held that an expert's opinion that "symptoms of fetal distress and probable abruptial placenta should have been identified" did not constitute an acceptable statement of the standard of care and the doctors' violation of that standard. Id. at 192. Similarly, in Anderson v. Rengachary, the Minnesota Supreme Court found an expert's affidavit failed to establish a standard of care and departure from that standard because the affidavit "did not state what particular measures a physician should take to avoid such trauma" and "failed to describe the defendant's acts or omissions that allegedly violated the standard of care." 608 NW.2d at 848.

Minn. Stat. §145.682, subd. 4(2000) also requires that an expert's second affidavit establish causation. To establish the requisite chain of causation a plaintiff's experts must link the alleged act or omission with the descendant's death. See Lindberg v. HealthPartners, Inc., 599 N.W.2d 572, 578 (Minn. 1999). Broad and conclusory statements fail to meet the requirement. Stroud 556 N.W.2d at 556.

In Stroud v. Hennepin Co. Medical Ctr., the Minnesota Supreme Court reviewed a failure-to-diagnose medical malpractice action in which plaintiff ultimately died of a pulmonary embolism. Id. at 553. The expert affidavit read in relevant part: "there was a

failure to diagnose and treat a sub-arachnoid hemorrhage which ultimately resulted in a complicated hospital course and death of the plaintiff." Id. at 554. The court found that expert's failure to outline a chain of causation from the alleged violation of standard of care to the claimed damage, death by pulmonary embolism, constituted a fatal flaw in the affidavit. Id. at 556. The court therefore upheld the district court's summary judgment against plaintiff. See id. at 556; see also Teffeteller 645 N.W.2d at 429(expert's statement that departures from accepted levels of care were a direct cause of patient's death failed to detail a chain of causation between alleged negligence and death); Anderson 608 N.W.2d at 848(expert's failure to outline a chain of causation resulting in injury to vagus nerve failed to fulfill the statutory requirement).

Likewise, in Lindberg v. HealthPartners, Inc., the Minnesota Supreme Court demonstrated that the chain of causation requirement is strict. The expert in Lindberg claimed that the failure to conduct tests to monitor hypertension and related failure to direct the patient to go to the hospital was the direct and proximate cause of a stillbirth. See 599 N.W.2d at 575. The Court reversed the Minnesota Court of Appeals and dismissed the claim, emphasizing that the expert failed to outline a chain of causation connecting the alleged failure to direct the patient to go to the hospital with the stillbirth. Id. at 577-78.

In this case, defendant nurses, defendant Benninghoff and defendant Regions Hospital each claim that plaintiff has not satisfied the expert affidavit statute. Each defendant moves for dismissal pursuant to Minn. Stat. § 145.682. The court now turns to its analysis of those motions.

**A. Motion for Summary Judgment or Dismissal of Defendant Nurses**

To support her claim against defendant nurses and to comply with Minn. Stat. § 145.682, plaintiff offers the expert affidavits of Nurse Jeanne Johnsen, Dr. James Bass and Dr. Melvin Gray. The court concludes that those affidavits do not satisfy the requirements of Minn. Stat. § 145.682.

**1. Dr. Bass**

As stated, Minn. Stat. § 145.682, subd. 3 provides that a plaintiff must produce experts "whose qualifications provide a reasonable expectation that the expert's opinion could be admissible at trial." Defendant nurses argue that Dr. Bass is not qualified to testify as an expert on the standard of care for nurses in a psychiatric unit. The court agrees. Dr. Bass has no practical knowledge of a nurse's role in helping to discover and treat DVT. (Udoibok Aff. 8 May 2002, Ex. B.) Similar to the pediatrician in Teffeteller who lacked sufficient experience in oncology, Dr. Bass lacks sufficient knowledge in nursing. See 645 N.W.2d at 427; see also Cornfeldt, 262 N.W.2d at 692-94 (finding that a specialist in internal medicine and gastroenterology

concentrating 10-15 percent of practice on diagnosis and treatment of liver disease had adequate practical knowledge to be an expert with regard to patient's suitability for gastrectamy, but insufficient practical knowledge to serve as an expert with regard to the patient's anaesthesiologist); see also Swanson v. Chatterton, 160 N.W.2d 662, 667 (Minn. 1968)(finding that a specialist in internal medicine lacked adequate experience in orthopedics to serve as an expert on failure to diagnose Volkmann's contracture resulting from supracondylar fracture of right arm). Because Dr. Bass's affidavit does not satisfy the requirements of subdivision 3, Dr. Bass cannot serve as an expert on the standard of care for nurses.[3]

**2. Dr. Gray**

Plaintiff acknowledges that the affidavit of Dr. Gray is offered primarily to establish the standard of care and the deviation from that standard for attending physicians in a psychiatric ward, not for the nurses. (Pl.'s Mem. Opposing D.'s Regions Mot. Summ. J. at 10.) While plaintiff nevertheless states that his affidavit "serves the auxiliary purpose of stating the deviation of care of all hospital employees," (id.) the court

[3] The court notes that even if the court were to find Dr. Bass competent to testify, Dr. Bass fails to identify a deviation from the standard of care and a chain of causation. His broad allegations that the nurses should have noticed and noted symptoms of DVT fail to offer a standard of care and departures from that standard of care with sufficient specificity to satisfy the requirements of subdivision 4. (Udoibok Aff. 8 May 2002, Ex. B.)

disagrees. Dr. Gray's affidavit fails to satisfy the requirements of subsection 3 for the same reasons that Dr. Bass' affidavit fails to do so.

**3. Nurse Johnsen**

Defendant nurses also argue that Nurse Johnsen does not satisfy the requirements of subdivision 3 because she is not qualified to diagnose DVT. However, Nurse Johnsen is not called upon as an expert in DVT, but as an expert in how a medical health nurse ought to respond to complaints of symptomatic pain and discomfort. Put another way, she is called upon to testify about the standard of care for nurses and about the deviation from that standard. Nurse Johnsen's affidavit and curriculum vitae show that she has extensive education and experience as a nurse in a medical health and chemical dependency setting. (Udoibok Aff. 8 May 2002, Ex. I.) Accordingly, the court finds that she satisfies the requirements of subdivision 3.

However, Nurse Johnsen's affidavit fails to satisfy the requirements of subdivision 4. Her statements are very similar to the expert's statements in Sorenson that defendants "failed to properly evaluate" and "failed to properly diagnose." 457 N.W.2d at 192-93. Nurse Johnsen's specific assertion that the standard of care would require "the nurses to make an assessment of the leg and notify the physician," (Udoibok Aff. 8 May 2002, Ex. I ¶9(b)), echoes expert's claim in Sorenson that symptoms "should have been

identified." 457 N.W.2d at 192-93. Similar to those claims that the Minnesota Supreme Court rejected in Sorenson, Nurse Johnsen's repetition of that vague standard in different forms - such as a failure to "chart" (Udoibok Aff. 8 May 2002, Ex. I, ¶13) the complaints of pain and "failing to respond" (Id. ¶14) - do not satisfy the standard of care requirement of Minn. Stat. §145.682, subd. 4.

Further, even if Nurse Johnsen's affidavit had satisfied the standard of care requirement of subdivision 4, which it does not, her affidavit fails to establish causation, as subdivision 4 requires.[4] Plaintiff points to three paragraphs in her affidavit, none of which even mention death. (See Pl.'s Mem. in Opp'n to Def. Regions Mot. Summ. J. at 17; see also Udoibok Aff. 8 May 2002, Ex. I ¶¶ 10, 12, 14.) Without providing the final link in the causal chain, the requirement that the defendant's action link with the death of the decedent clearly cannot be met.[5] With no sufficient chain of causation, plaintiff's expert affidavit fails to satisfy the requirements of Minn. Stat. § 145.682 with respect to plaintiff's claim against the nurses. See Stroud, 556 N.W.2d at

---

[4] Plaintiff acknowledges in her brief that primary purpose of Nurse Johnsen's brief is not to establish causation, but to establish a standard of care and a deviation from that standard. (Pl.'s Mem. of Law Opp'n Def. Regions Summ. J. Mot. at 7.)

[5] Again, even if the court were to accept Dr. Bass as an expert on nurses, plaintiff fails to establish the chain of causation. Bass fail to explain how the failure to chart or note Graham's complaints of pain led to his pulmonary embolism and death. (See Udoibok Aff. 8 May 2002, Ex. B.)

556 (finding expert affidavit does not satisfy statute where affidavit provided only broad, conclusory statements as to causation); see also Teffeteller, 645 N.W.2d at 429 (finding expert affidavit failed to satisfy chain of causation requirement); Anderson, 608 N.W.2d at 848 (same); Lindberg, 599 N.W.2d at 578 (same); Sorenson, 457 N.W.2d at 193 (same).

A plaintiff's failure to satisfy Minn. Stat. § 145.682 may result in dismissal or, if good cause is shown, extension of the time limit for submission of the affidavit. Minn. Stat. § 145.682, subd. 6.[1] According to the Minnesota Supreme Court, subdivision 6 "cuts with a sharp but clean edge." Lindberg 599 N.W.2d at 578.[2] However, dicta in Sorenson advises courts to consider "less drastic measures" in "borderline cases." 457 N.W.2d 193. To that end, the Minnesota Supreme Court has allowed for an extension of time to

---

[1] Subdivision 6 was amended on May 22, 2002. See Act of May 22, 2002, ch. 403, § 1, 2002 Minn. Laws (amending Minn. Stat. §145.682, subd. 6). Subdivision 6 now allows plaintiff to amend her complaint before hearing of the motion to dismiss. However, because the amendment applies only to causes of action commenced on or after May 22, 2002, it does not apply to the case at bar. See Medina v. EMSA Correctional Care, Inc., 2002 WL 1488773 n.4 (D. Minn. 2002).

[2] Plaintiff suggests that the courts have construed Minn. Stat. §145.682 too narrowly, leading to dismissal where the affidavits provide "general disclosure" which plaintiff believes sufficient. (See Pl.'s Mem. Opp'n Def. Regions Mot. for Summ. J. at 22-23.) Only months ago, in Teffeteller, the Minnesota Supreme Court found the characterization of the statutory requirement as a "general disclosure" or a "sneak preview" in Demgen v. Fairview Hosp., 621 N.W.2d 259, 265-55 (Minn. App. 2001) erroneous. See Teffeteller, 645 N.W.2d at 429-30. This court is bound by that finding.

amend an affidavit upon a showing of "good cause." Anderson 608 N.W.2d at 847-849; Lindberg 599 N.W.2d at 578; Minn. Stat. §145.682, subd. 4(b).

The "good cause" exception is construed in the context of Minn. R. Civ. P. 6.02. Anderson, 608 N.W.2d at 849-850(citing Stern v. Dill, 442 N.W.2d 322, 324 (Minn. 1989).[3] The first subdivision of Minn. R. Civ. P. 6.02 explains that without motion, the court may order a deadline period enlarged if a request is made before the expiration of the original period. In this case, plaintiff has made no requests for time extension, and the court finds that no good cause exists for such an extension. Accordingly, plaintiff's claim against defendants Sue McGinley,

---

[3] Plaintiff claims that the mandatory dismissal provision of Minn. Stat. § 145.682 is unconstitutional because it violates the separation of powers doctrine. A party challenging a statute must demonstrate that the statute is unconstitutional. See Planned Parenthood of Minnesota v. State of Minn., 910 F.2d 479, 482 (8th Cir. 1990); Gall v. Mayo Clinic, 2001 WL 267490 at *4 (Minn. Ct. App. 2001). Plaintiff does not satisfy her burden. Moreover, the Minnesota Supreme Court, the Minnesota Court of Appeals and this court have previously determined that the application of § 145.682 to medical malpractice claims is constitutional. See, e.g., Medina EMSA Correctional Care, Inc, 2002 WL 1488773 (D. Minn. 2002)(holding statute constitutional); Anderson, 608 N.W.2d at 850; Henke v. Dunham, 450 N.W.2d 595, 596 (Minn. Ct. App. 1990)(finding statute does not violate equal protection clause); Gall v. Mayo Clinic, 2001 WL 267490 at *4 n.3 (Minn. Ct. App. 2001)(finding party did not satisfy burden of proving that Minn. Stat. § 145.682 violates the separation of powers doctrine). The court therefore rejects plaintiff's argument.

Nonceba S. Mbangata and Sandra Fagerberg for medical malpractice is dismissed with prejudice.[4]

**B. Motion for Summary Judgment or Dismissal of Defendant Benninghoff**

With respect to plaintiff's claim again Dr. Benninghoff, plaintiff offers the affidavits of Dr. Bass and Dr. Gray to comply with Minn. Stat. § 145.682. Because plaintiffs' expert affidavits fail to link Dr. Benninghoff's non-diagnosis with Graham's death, the court finds that the affidavits fail to satisfy the requirements of Minn. Stat. § 145.682, subd. 4.

Specifically, as in Stroud where the expert affidavit failed to establish a chain of causation between the violation of the standard of care and the claimed damage, plaintiffs' expert affidavits fail to link Dr. Benninghoff's non-diagnosis with Graham's death. See Stroud, 556 N.W.2d at 556; see also Sorenson, 457 N.W.2d at 192-93. Dr. Bass asserts that the "nondiagnosis of the patient's condition led directly to the pulmonary embolism which led to the patient's death." (Udoibok Aff. 8 May 2002, Ex. B ¶23.) While Dr. Bass provides a link to the actual cause of death, the pulmonary embolism, Dr. Bass never clarifies how the

[4] If the court were to consider defendant nurses' alternative basis for dismissing plaintiff's claim of medical malpractice, the court likely would find that plaintiff cannot establish a prima facie case of negligence against defendant nurses and grant defendants' motion for summary judgment.

non-diagnosis of DVT led to the pulmonary embolism. (Id.) As in Stroud, that gap in his outline of causation is fatal.

Furthermore, Dr. Gray's affidavit does not satisfy subsection 4 because he fails to link the non-diagnosis with the DVT or the DVT with the pulmonary embolism. (See Udoibok Aff. 8 May 2002, Ex. C.) Since plaintiff's affidavits provide broad and conclusory statements that fail to establish a chain of causation, plaintiff's affidavits fail to meet the requirements of Minn. Stat. 145.682(4) and the court dismisses plaintiff's claims against John Benninghoff with prejudice.[5] [6] See Stroud, 556 N.W.2d at 556-57; see also Teffeteller, 645 N.W.2d at 429; Anderson, 608 N.W.2d at 848; Lindberg, 599 N.W.2d at 578; Sorenson, 457 N.W.2d at 193.

**C. Motion for Summary Judgment or Dismissal of Defendant Regions Hospital**

Because the court dismisses plaintiff's claims against defendants Benninghoff, McGinley, Mbangata and Fagerberg, plaintiff's claims against Regions Hospital based upon vicarious liability also fail. Edgewater Motels, Inc. v. Gatzke, 277 N.W.2d 11, 15 (Minn. 1979)(explaining that, in order to be held vicariously liable, its employee's conduct must be negligent and

---

[5] The court finds that no good cause exists for an extension of time in which to supplement plaintiff's expert affidavit.

[6] If the court were to consider defendant Benninghoff's alternative basis for dismissing plaintiff's claim, the court likely would find that plaintiff cannot establish a prima facie case of negligence against defendant Benninghoff and grant defendant's motion for summary judgment.

the employee's wrongful act must be committed within the scope of his employment). Plaintiff nevertheless insists that her claim against Regions Hospital survives because the hospital is liable for the negligent performance of a nondelegable duty by an independent contract, Dr. Benninghoff. Plaintiff, however, has failed to provide any evidence to support her allegation. The court therefore grants defendant Regions Hospital's motion for summary judgment.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that

1. The motion for summary judgment of defendant City of St. Paul (Docket No. 36) is granted.

2. The motion for dismissal with prejudice of defendants Sue McGinley, Nonceba S. Mbangata and Sandra Fagerberg (Docket No. 48) is granted pursuant to Minn. Stat. § 145.682.

4. The motion for dismissal with prejudice of defendant John Benninghoff (Docket No. 41) is granted pursuant to Minn. Stat. § 145.682.

5. The motion for summary judgment of Regions Hospital (Docket No. 60) is granted.

Dated: October 30, 2002

David S. Doty, Judge
United States District Court